## Kister Trust

*Otto Kraus, Jr.,* for accountants.

*Raymond G. Cohlbert,* guardian and trustee ad litem.

LEFEVER, J., April 16, 1959.—By deed of trust dated June 9, 1930, a copy of which is hereto annexed, Alfred B. Kister, settlor, directed that at his death the trustees collect the proceeds of certain life insurance policies on his life, made payable to trustees, and that they invest and reinvest the proceeds "in such securities as said Trustees may deem prudent without restriction to so-called legal investments for Trustees . . .". He directed further that trustees pay to his wife, Eva Kirk Kister, for life the net income therefrom and so much of the principal, not exceeding $5,000, as she should request in writing. He specified that upon her death the trustees should divide the principal of the trust into as many shares as there were then living children of settlor and deceased children represented by living issue and (1) that trustees should hold one such share in trust for each daughter, to pay the income to her and at age 25 years or any time thereafter, upon her written request if the trustees deemed it for her best interest, to pay to her one-third of the principal and upon her written request to purchase a home for her, the same to constitute an asset of the trust; and (2) that trustees should hold one such share of the trust for each of settlor's sons, to pay the net income therefrom to him and at age 25 years to pay him one-third of the principal and another one-third of the principal at age 35 years upon his written request. The deed further provided that upon the death of a child of settlor his or her share of the then principal should be distributed to the living issue of such child, and if none so lived said share should be added to the share or shares of settlor's other children, and if all children died then the principal should be distributed

to settlor's next of kin, under the then intestate laws of Pennsylvania.

Under Paragraph sixth, settlor reserved to himself the rights: (1) To change beneficiaries of the insurance policies without joinder of the trustees; (2) to make loans on the policies; (3) to accept all shares of surplus and dividends on said policies, and (4) to accept and receive all cash payments and to surrender said policies and collect the surrender value.

Under Paragraph tenth of said deed, settlor reserved the right to revoke the trust. Settlor did not bind himself to make payment of premiums, nor did said trustees.

Settlor died April 7, 1947, and thereafter the trustees collected the proceeds of all the insurance policies which were referred to in detail in exhibit A attached to the agreement of trust except Provident Mutual Life Insurance Co. Policy No. 210137 [1] and Policy No. 331645, which, according to principal credit item on May 12, 1947 (see page 3 of account), were withdrawn since the trustees were not the beneficiaries under the policy.

On April 1, 1958, Eva Kirk Kister, settlor's widow, life income beneficiary and cotrustee, died. The present account is filed because of her death.

At the time of the widow's death there were only two children living, namely, Alfred B. Kister, Jr., and Mary E. K. LaMotte, and no deceased children. Mary E. K. LaMotte is over 25 years of age and has made written request for immediate distribution of one-third of the principal of her trust, which had been approved by the trustees. Also, Alfred B. Kister, Jr., has made written request for distribution of two-thirds of the principal of his trust.

---

[1] Apparently the correct policy number is 210134. See exhibit A and page 1 of the acount.

There has been no prior adjudication of this trust.

All parties in interest have had notice of the audit. The executrix of the will of Eva Kirk Kister, the deceased life tenant, by writings hereto annexed approves the account and waives the filing of an account of income up to February 11, 1958, on which date the last income statement was rendered to Eva Kirk Kister.

By decree of this court, dated January 15, 1959, Raymond G. Cohlberg, Esq., was appointed guardian ad litem for Kathleen Kister, Harvie Jan Kister, Pamela Kirk LaMotte, William Oscar LaMotte, Alfred Kister LaMotte and David Hall LaMotte, minors, and trustee ad litem for the unborn issue of Alfred B. Kister, Jr., and Mary E. K. LaMotte, respectively, and for all unascertained interests, to represent the said minors and unborn and unascertained persons at the audit of the present account.

The account reflects the receipt by the trustees of certain stock dividends, rights to subscribe to stock, proceeds of sale of rights to subscribe to stock and gains on sales of stock. All such items have been retained in principal. Among the powers which settlor conferred upon his trustees was the power "to treat as principal all stock dividends, profits from sales of securities or other property, or proceeds of sale of rights to subscribe for stock . . .". Since settlor died April 7, 1947, and since he retained the right to borrow, to change the beneficiaries of the policies of insurance, to surrender the policies and receive surrender value thereof, and the right to revoke the trust, the accountants in their notice to the interested parties took the position ". . . that no trust came into existence until his [settlor's] death in 1947, at which time the above-quoted power conferred upon the trustees became lawful and no right of apportionment arose."

(See paragraph (*h*) of statement of proposed distribution.)

At the audit no party in interest objected to the accountants' position that settlor's direction or power to his trustees "to treat as principal all stock dividends, profits from sales of securities or other property, or proceeds of sales of rights to subscribe for stock" is fully lawful. The guardian and trustee ad litem in his comprehensive and able report expressly approved this position.

The case of Conway Trust, 9 D. & C. 2d 385, 389, is very similar to the instant case. In the cited case it was stated: "Until settlor's death, the trustees had no duties to perform; the beneficiaries could not maintain an action against settlor if he chose to take the cash surrender value of the policies, or if he chose to change the beneficiaries thereof. . . .

"In 1945, the legislature of Pennsylvania announced the public policy of Pennsylvania with regard to apportionment. This policy was incorporated in the Uniform Principal and Income Act of May 3, 1945. The legislature enacted this statute and fixed this public policy with deliberation and care in an effort to eliminate the myriad of complexities and administrative problems in apportionment encountered under the Intact Value Rule. This public policy, so enunciated, should be followed, if possible: Vederman Estate, 78 D. & C. 207; 2 Fiduc. Rep. 596. The Supreme Court of Pennsylvania has recently indicated that the doctrine of apportionment in Pennsylvania is not to be extended beyond the areas defined in the cases: Hostetter Estate, 388 Pa. 339.[2] It would seem to follow, therefore, that unless rights are retroactively affected, which are clearly vested, the Uniform Principal and

---

[2] To the same effect are Cunningham Estate and Harvey Estate, 395 Pa. 1, 62.

Income Act of May 3, 1945 should be held to apply." The auditing judge will follow in the instant case his decision in the cited case, as to which no exceptions were filed.

Accordingly, the auditing judge rules that the trustees have properly treated as principal the stock dividends, proceeds of rights to subscribe to stock and gains on sales of securities. . . .

And now, to wit, April 16, 1959, the account is confirmed nisi.